for the day is 23-10121 Pribyl v. Warden. Ms. Sanders is here for the appellant. Ms. Couch Ms. Sanders, whenever you're ready. Good morning. Barbara Sanders on behalf of plaintiff Mr. Frantisek Pribyl. Mr. Pribyl was a federal prisoner at the Federal Detention Center in Tallahassee, Florida. He ultimately filed a complaint that was treated as the operative complaint by the magistrate judge, complaining about the conditions under which he was incarcerated. The first condition was that he was placed in the special housing unit for an administrative purpose and during those five days in the SHU, he was completely deprived of running water. That is an Eighth Amendment claim under the Carlson case. And then his second complaint was that he was not treated for a variety of health issues for the whole period of time. Again, that's another Eighth Amendment claim, deliberate indifference to his serious medical conditions. Finally, he complained that his right to practice his religion was interfered with by Defendant Arnold. So on the first two claims, those would be brought under Bivens, right? If anything? So how do you get around the fact that Bivens seems to be more or less limited to its facts these days? Well, Bivens is limited to its constitutional provisions, and that's an Eighth Amendment claim. Then we get a further refinement of Bivens, including the Goldie case cited by the government and its supplemental authority. But what happened... So I mean, in this case from the Supreme Court, recent case, the court said that it's not extending Bivens to a new context? Correct. Right? So would not your arguments require us to extend Bivens to a new context? No, sir. Okay, why is that? Because it fits under the Carlson rule, which is the deliberate indifference and the torture for the denial of the water are Eighth Amendment claims. Okay. I mean, it's not in Bivens context. I mean, Goldie was also an Eighth Amendment claim. The Supreme Court's case was also an Eighth Amendment claim. So I guess that's what I'm trying to figure out, what the difference is then between the Eighth Amendment claim in that case where the Supreme Court said we're not extending it in the Eighth Amendment claims in this case. So what they did in Goldie, they determined because there was an alternative remedy under the Bureau of Prison Administrative Procedures, basically. It said that that would prohibit going forward on a Bivens. Bivens was pre-ARP is what they call it. And so the current Supreme Court said because now we have the BOP rules, you have to use those. But in Mr. Prible's case, the magistrate court and district court determined that Mr. Prible's use of the administrative code was thwarted. In other words, yes, there are these rules for BOP, but he was thwarted in using it. And then the defendants did not object to that finding. Could it be your argument that if he was not denied his request for counsel, he might have more appropriately filed a claim under the Religious Freedom Restoration Act? Absolutely. I think that's probably your strongest argument, that he was denied his right to counsel. Yes. Could you address that for us? Absolutely. So Mr. Prible has personal characteristics that make it almost impossible for him to navigate the federal court system or even the administrative system at BOP. He is not an English language speaker. There is a case that says you don't have, that's not necessarily dispositive. He has a very low educational level. I think it's ninth grade. He had never had any, he never was in the system at all. I mean, he had no criminal history, had no litigation history. So everything that he was trying to do was over his head. And you can look at his pleadings and make that determination pretty easily. Then the magistrate said, well, if I find that you did exhaust or that you fooled him, then I might reconsider giving him a lawyer. And he never got a lawyer. And at the same time, which I credit the magistrate for looking into the pleadings and saying, well, maybe you have a religious freedom under the statute, which was very nice of him. But then he determined that he never really got any pleadings from Mr. Prible on that. He just decided, well, you might have this claim, but I find that you weren't substantially. But isn't the problem, so I mean, the magistrate judge notes this in the paragraph of the magistrate judge's order. It says, look, they moved for summary judgment against you. I mean, I read the affidavits that the warden filed. The affidavits deny that any of this ever happened. You know, there's an affidavit from the security guard that says I never, like, messed with his cross. I never did anything with that. And then Mr. Prible doesn't respond to that at all with any evidence. He doesn't sign anything. He doesn't do anything in response to that. So what is the magistrate judge supposed to do but grant summary judgment at that point? There's no evidence supporting any of these claims in the complaint. Well, what we have argued is that the magistrate weighed facts. Well, how could you weigh facts if there's only facts submitted by one side? But Mr. Prible denied. No, he didn't. Not in anything he signed under penalty of perjury or an affidavit. That is true. Yeah, so, I mean, there's no, your complaint is not evidence, right? It is not. Okay. And I know your brief only cites the complaint for your side of the story. I guess I'm just putting myself in the magistrate judge's position. It's the plaintiff's job to come up with some dispute of fact. I mean, if you look at the paragraph in the magistrate judge's opinion, I mean, the magistrate judge says this. Like, the first problem here is that there's just no evidence at all in support of the plaintiff. But then the magistrate judge does go on and do a lot of analysis. But, I mean, it seems like the first problem here is just like there's no evidence at all. Well, I think that goes to what Judge Wilson is saying. Had he had an attorney at that point. But isn't there, I get your point about the attorney. But I think there is a procedural issue that we have to address in that this was raised before the magistrate judge. The magistrate judge ruled on it. And it's still an open question, as far as I know, in our circuit, as to whether Mr. Prible needed to object to that denial. Because, am I correct, Mr. Prible never objected to this, the denial of counsel? He did not object, but he kept renewing it. And he kept, so he didn't object to that ruling, but he kept renewing it. He renewed it multiple times. And every time he'd either, I don't think. But he never took it to the district judge, right? He never took it to the district judge. And he didn't file a response or objections to the RMR that said, I object to not getting my lawyer appointed. But he kept renewing it. And he was also, the judge indicated that if I decide that you're not, that you get over the hurdle of exhaustion. I mean, he did, just to be clear, he did file a document with the district court, document 175 that said, motion for the appointment of counsel or proper legal help. Correct. He filed multiple documents asking for a lawyer. I mean, that was after the magistrate judge had suggested that he be ruled against, right? So, I mean, that wasn't like an objection objection. But, I mean, he did ask the district court to do something on that.  Nothing in these pleadings is formal. Like you would see if there was a lawyer. But I do think when he renewed it and he keeps saying, I really don't know what I'm doing and I'm having all these difficulties with COVID. I can't get pleadings filed. I mean, he couldn't even get service. Yeah, here's. I was just on that very small, on the district courts. The district court never ruled on that, right? That was denied his move. On which, Your Honor? On the request to the district court for appointment of counsel. The district court did not ever rule on that. Okay. He adopted the R&R. But I don't think he ever, the district court ever ruled on that. Okay. Specifically on the order that denied the counsel. He was denied specifically by the magistrate twice, I believe. And I don't think those were final R&R orders that went to the district court for adoption. So, it was just left on the table, I suppose. So, the last indication in the record where he requested counsel is where? I think it's that 175. It's long after the R&R on the summary judgment. I say long after. It's many documents after the denial of the, or the granting of the summary judgment. All right. Thank you. You've got five minutes for rebuttal. Yes, sir. Thank you. Good morning, and may it please the court. Mary Ann Couch for the United States, the Bureau of Prisons Officials, as named defendants. I'll start first, unless the court would like to ask other questions. I'd like to start with the Bidens issues and the Rule 28J letter that I submitted in March, which raises new cases, Johnson v. Terry from this court, Judge Karn's opinion, and Goldie v. Fields from the Supreme Court, both of which were published after the briefing in this appeal. My opposing counsel mentioned multiple times that it's her position that this case sits within the Carlson case, which was one of the three identified by the Supreme Court where a Bidens cause of action was identified. The United States would vehemently disagree with that position. The Carlson case was limited to, it was an Eighth Amendment case, but it was a situation where the claims at issue, what the inmate was complaining about actually resulted in his death. The facts of this case are in no way similar to that, and so it absolutely would be a new Bidens context. And as this court recently said in Johnson v. Terry, it's now been 46 years since the Supreme Court has recognized a new Bidens cause of action. There's three instances, Bidens, which was Fourth Amendment, Davis, Fifth Amendment, sex discrimination, and the Carlson case, which I've mentioned, which was Eighth Amendment, which resulted in death. There's been no extensions to that. And in the Johnson case by this court, and then most recently in June of 2025 at the Supreme Court in Goldie, it's clear that there is a sharpening and a refining on that, and Bidens causes of actions are not going to be extended. So what does that mean for this court? It's the United States' position that the most straightforward way to address the majority of the claims presented on appeal are that the actions that have any potential Bidens cause of action to them were properly dismissed. And this court can affirm the judgment of the district court because those Bidens causes of actions cannot proceed. And so the court would undergo the two-step process that the Goldie and Egbert line of cases reinforce, which is first to look at whether this was a new Bidens context. And as I've already explained, it seems very straightforward to us that it absolutely would be a new context. And if that's the case, whether there are special factors indicating the judiciary is less equipped than Congress, the United States would also argue that that's the answer to that because, yes, and it's really simple here, as in some of the other cases that have been before this court and the Supreme Court, that because the BOP had a grievance procedure, and it doesn't matter actually how successful that was or if it gave enough options or if the individual was successful in that grievance procedure, it just matters that it existed. And here that was the case with respect to any alleged Fifth Amendment or Eighth Amendment violations. There was a BOP procedure at issue. Also, any of his religious interference claims could have been brought through that process as well. And secondarily, though, to that, there was another option, as the court has already talked about this morning, under RFRA, that's another option for an individual to pursue. So a Bidens wouldn't be the only type of action. So when the court looks at this, it can affirm the judgment, go through that analysis and confirm that there can be no new Bidens cause of action here. Why isn't it easy? I mean, maybe that is the best way to do it, but it seems like if you look at the magistrate judge's opinion, the magistrate judge was just kind of like, look, you alleged these things in your complaint. You say you didn't get any water. You say that your cross was taken from you and kicked across the floor. There are affidavits in the file that deny those things, and you have never filed anything in response to that. And so I have to grant summary judgment against you. Why isn't that sort of the most straightforward way to resolve the case? Certainly, Your Honor, I would agree that that's a straightforward way as well. If the court chooses to go ahead and look at the evidence that was submitted and affirm on that basis, that's what the court did below. But because of the new case law in Bidens, it also seems straightforward to say out of the gate that this plaintiff cannot pursue these types of cases under undisputedly clear Supreme Court and Eleventh Circuit precedent when you go through that analysis. So either – Yeah, but he would still have a RFRA claim though, right? Yes, and I'll get to that in a minute. You're right, Your Honor. The RFRA claim is the only survivable claim in this case after you go through the Bidens analysis. So if the court prefers to go look at the evidence and say there was none, the plaintiff didn't bring any evidence, that's absolutely the case. And that goes to the RFRA claim. But even before we get to the evidence, with respect to the RFRA claim, there's also, when I look at this case, a pleading problem that Mr. Prible never alleged that he was denied the ability to pray or use the item, whether it be a rosary or a cross necklace, to actually practice his faith. And that matters because under RFRA, what the court is looking at is whether or not the government imposes substantial burden on the practice of religion. But doesn't he have a sworn complaint that David Arnold kicked his cross and routinely interrupted his prayers? And David Arnold denies that. And it seems to me that the court conducts a credibility evaluation and accepts David Arnold's statements as true. And the court can't do that. Your Honor, you're correct that David Arnold did deny those allegations. I would disagree, the United States would disagree with the conclusion that there was any weighing of any credibility. As Judge Brasher had pointed out, I think, in my opposing counsel's argument, there was no evidence to weigh because Mr. Prible didn't actually present any evidence. There wasn't a sworn complaint, right? He never signed his complaint under penalty of perjury. That's correct, Your Honor. There's no evidence that Mr. Prible submitted at all in this record. And it's voluminous with filings. There's close to 200 ECF filings in the district court case for this matter. But there's no evidence submitted by Mr. Prible to— The court could not accept his statements as to how his religious rites were violated at all? Your Honor, I don't believe that the court could accept as evidence, ruling on summary judgment, that he presented that evidence. But if you're concerned about that, Your Honor, I would urge you to consider that Mr. Prible didn't allege what was necessary under RFRA in the first place. So it's our position that there's not evidence to support his allegations, but his allegations actually aren't sufficient because what's required is a substantial burden on the practice of religion. Yeah, he was proceeding pro se at the time, right? Yes, Your Honor. But he's an Eastern European with a language barrier. He had trouble representing himself. Why wasn't he entitled to the appointment of counsel to represent himself in a case of this nature? Sure, Your Honor. I'll switch to that assessment. So although it's well documented in the record that Mr. Prible had potentially struggles with addressing different things with the court, maybe had difficulty filing things. As I mentioned, there was close to 200 filings, I think, in this case, a lot of which were by Mr. Prible. He actually survived a very lengthy and detailed motion to dismiss that was filed by the government early on in this case. He's filed repeated different motions asking for different things. He's received many extensions of time. And this court's review of the district court's conclusions on this is, of course, abuse of discretion. And it's our position it absolutely was not an abuse of discretion for the magistrate and then the district court to not appoint counsel here. They found that there was no sufficient effort from Mr. Prible to actually secure counsel, and there were no exceptional circumstances here. My notes reflect that he filed a request for extension to file, to request counsel 14 times. Is that incorrect? Your Honor, I did not count the number, but that definitely could be correct because he did ask many times. Yes. So he definitely wanted counsel to be appointed. I guess the question for us is, did the district court, or rather the magistrate judge, I suppose, abuse its discretion by declining to appoint counsel? Are you aware of any case where we've said a lower court has abused its discretion by declining to appoint counsel? Your Honor, I'm not aware. I'm not sure I actually looked at that specific issue before coming here today, so I can't represent that I scoured Westlaw on that issue. But when we get back to what matters here is whether or not, as you said, Judge Brasher, the district court and magistrate abused their discretion here. They looked at the factors. They acknowledged that he had struggles. They acknowledged they knew that he had asked many times and obviously wanted counsel. But was it an abuse of discretion for the judge to not give him counsel when the judge viewed the information before him and decided that, you know, there wasn't enough effort for him to secure counsel, and in fact they didn't think it was that complicated? And now if we're looking at really what the claims are, we know he can't survive on Bivens. The only potential avenue for relief is under RFRA, for which the court really went over and, you know, backwards for him to create that cause of action for him. So he had to respond to a 90-page motion for summary judgment. And it was appropriate for him to do that on a pro se basis, responding to a 90-page motion for summary judgment? Well, Your Honor, it's not my call to say whether or not that was appropriate. I think what we've got to look to is, is it an abuse of discretion of that judge to say when he had already survived a motion to dismiss, I don't know the page number, but it was pretty lengthy and raised a lot of the same arguments as well, Your Honor. I mean, here's what the magistrate judge said in his order. It said, the court provided Preble numerous opportunities to respond to the motion for summary judgment, and then cites document 142, 153, and 164, which are all orders by the magistrate judge telling him, hey, you need to file some response to this. And then the order goes on and says he basically never responded to it with any evidence at all. So, I mean, I guess the question for us is whether the magistrate judge was under the obligation, instead of sending these orders that says, hey, please respond to this, was to appoint him counsel to help him respond to it? And I think the concern, Your Honors, is to think about in the context of this case, how that might affect other cases is there are a lot of inmates in the Federal Bureau of Prisons that may have litigation and file lawsuits. There are probably a lot of those also that may have trouble speaking English, may have mental capacity issues or other things that may affect them. None of them are, you know, not many of them maybe have the sufficient education that a lawyer, that an appointed lawyer may have to be able to come and argue in court and file briefs. But is it the courts, is it required by the courts to appoint counsel in all of those cases or in any of those cases? Obviously, it has to be a case-by-case assessment, but there's nothing here in the record when you see the magistrate multiple times going, giving Mr. Prible opportunities and opportunities to file and consider his, you know, whatever it is he wants to bring to the consortate court and actually fully consider his point of view. You see the magistrate doing that time and time again, giving him multiple extensions of time. This isn't a situation where the magistrate or the district court just writ off this individual and didn't give him the time of day. It's really the opposite. So I don't think the court can sit here and say that there was any abusive discretion in this magistrate and then the district court when it really appears to me that they gave him every opportunity to bring his case. He wasn't able to do it. I just figured to address the same one that I posed to your opposing counsel, but for you, I guess, two procedural questions. One is whether that issue, since he did not object to the denial of the magistrate judge, the magistrate judge's denial of his request for counsel, is that properly before us? But then also for you, you haven't discussed it today, but I know part of your argument is that he didn't properly exhaust his administrative remedies, but the magistrate judge found that he did, but you didn't object to that. Is that something that we can consider? Yes, Your Honor. So I'll take the first issue first with respect to the potential waiver of my opposing counsel for Mr. Prible not challenging the magistrate's order. And in context, honestly, with the United States' position on exhaustion, you'll see obviously that that was briefed extensively. I haven't discussed it yet. I'll raise that. I don't think it's our strongest argument. I don't think that has been waived, but I do think Mr. Prible's challenge of the magistrate's order on the appointment of counsel has been waived, and they actually can be reconciled, and here's why. So with respect to Mr. Prible's obligation, when he's the appellant actually filing in this court, bringing claims before this court and appealing certain issues, there's an obligation to have actually preserved all of those on every ground below. And there's law in this circuit with respect to even a pro se litigant having waived his right for appellate review of a magistrate's nondispositive order, which is what we have here, the order on appointing counsel. And that's in the Faro v. West case by this court and the Smith v. School Board of Orange County. I think that that line of cases is pretty undisputed with respect to Mr. Prible waiving the issue, but I think if the court doesn't want to address that or thinks there's a question, it clearly wasn't an abuse of discretion. With respect to the exhaustion argument for the United States, it's absolutely the government's position that the record supports the failure of Mr. Prible to exhaust. If the court wants to review the evidence, it can affirm on that basis. And even though the United States did not object to the magistrate's finding on that issue, that makes sense and isn't a waiver here because I see that my time has expired. If it's okay to continue answering your questions, that's good. The reason that in our case, with respect to the exhaustion, there's not a waiver is because I don't think it's the appellee's responsibility to have necessarily objected on every basis below to be able to respond to that argument in the appellate court. So, what happened is the United States prevailed on the summary judgment order, ultimately, not on exhaustion grounds. But we weren't necessarily required to object on that basis, even though because it was a favorable judgment to us, not knowing that this would ultimately go to appeal and then we'd want to raise that again. It was fully in the record. We raised it at motion to dismiss stage and at summary judgment. So, I think it's contextually different. Although, Judge Kidd, I can't point you to a case on point. Right. So, from your perspective, though, it would have prevented you from appealing on that issue. Yes, Your Honor. I would agree with that. Absolutely. All right. Thank you. Thank you. I place the court. The government could have filed and asked for permission to do an interlocutory appeal on that issue. They did not do that. There was a rule that said that. Well, there's no reason because they won. Why would they appeal when they won? On the exhaustion issue. Yes, they won. They got summary judgment on the claims. There's nothing for them to appeal. But now they want to raise exhaustion as a dispositive issue when they didn't raise it before. Well, I guess here's the thing. We say all the time that we can affirm for any reason that's established by the record. And I don't think we've ever required someone to appeal on something. I mean, there's nothing to appeal from because they haven't been harmed by the judgment below. I mean, if a district court says, I don't like you. I think you're stupid. This has all this negative stuff about you. But then rules in your favor, you don't get to appeal because you won. Right? Well, they lost initially on the motion to dismiss. That's the point at which they could have raised it. And then they wouldn't even need to do the motion for summary judgment. It was dispositive at the motion to dismiss level. And there are ways that they could have addressed that. But we . . . I was going to tell you, we would not let them appeal that as a matter of permission. I would not give permission to allow them to appeal that. I don't think anybody would. Why would we want them to do that? Why would we want to hear an exhaustion appeal from every denial of a motion to dismiss in every prisoner litigation when it's going to eventually be resolved on summary judgment on some other grounds? Why would we want that to be the rule? Because it saves judicial labor. It's dispositive at that early stage. Well, I think that there's a difference. I think interlocutory appeal is, you know, might be a bridge too far. But there is a process, right? Because after a report and recommendation, it has to go to a district judge who then has to decide whether or not to adopt it. And that's really the period where if you're dissatisfied, even if you prevail on 90% of the issues, if you're dissatisfied with one of the issues, you can raise that to the district judge. And then the district judge has the opportunity to review it. But what do you think about your opposing counsel's position that because they're not the ones affirmatively appealing that issue before us, we can still look to the record and they can still direct us to the record to that issue in responding to your appeal? Well, because the magistrate and district court made a decision based on the fact that it was a thwarted effort. And I don't see how this court can go behind that and say, well, we've decided that it isn't thwarted. That's sort of the basis of our objection to the summary judgment in general is that it makes credibility decisions. It finds Mr. Preble incredible and it invades the province of the jury. It wasn't a simple, and I do want to correct something. His initial complaint, the operative complaint number 38, is sworn under perjury. It's his response to the. I'm sorry, I've got it right in front of me. What page is it sworn under penalty of perjury? Document 38 on page. This is the form used for and on page 12 of 23, I hereby certify under penalty of perjury that the complaint was. Deposited in the prison's mail system? Yes, sir. Yeah, so he swore that it was deposited in the prison's mail system. I'm sorry, I certify, I declare, I'm sorry, page 11. I declare under penalty of perjury the foregoing is true and correct, et cetera. And it continues on. It's the prisoner complaint form. Okay. They use it in 1983 or in Bivens. And I wanted to just briefly address, you know, Bivens is a big issue and it's being played out all across the nation. But the Supreme Court has said Carlson is still good law, or at least the Supreme Court hasn't overturned Carlson. And what the government is saying is, well, Carlson died and that makes a difference. That is a matter of degree. But it isn't a material difference between Carlson and Mr. Pogba that there was a deliberate indifference to his medical conditions or his safety, health, well-being by the deprivation of the water. Now, just real briefly on the RFRA, again, the magistrate did what we've complained about as to the Bivens, that he made credibility choices. He made the decision to believe Arnold and disbelieve Mr. Pogba. And that is what this Court should reverse on. Thank you very much. Thank you. And we note that you were court-appointed to represent this person. We agree. We thank you for that. We really appreciate that. Especially anyone who practices on the coast coming up to Montgomery to do this argument. We really appreciate it. All right. Court will be in recess until tomorrow.